UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:25-CV-00018-EBA

ANGELA FLOWERS,                                                      PLAINTIFF,

V.              **MEMORANDUM OPINION & ORDER**

FRANK BISIGNANO,
*Acting Commissioner of Social Security*,                 DEFENDANT.

*** *** *** ***

### INTRODUCTION

Plaintiff, Angela Flowers, appeals the Social Security Commissioner's denial of her applications for Social Security Disability Insurance Benefits (SSDI) under Title II and Supplemental Security Insurance (SSI) under Title XVI of the Social Security Act. [R. 1]. Flowers alleges that the Administrative Law Judge's (ALJ) decision was not based on substantial evidence as required by 42 U.S.C. §405(g). [*Id.*]. Flowers and the Commissioner filed briefs in support of their respective positions, [R. 9; R. 13; R. 14], so this matter is ripe for review. For the reasons discussed below, the Court will affirm the Commissioner's decision.

### FACTS AND PROCEDURAL HISTORY

Angela Flowers is approximately 58 years old. [R. 8-2 at pgs. 32-33]. The records for this case indicate that she has at least a high school diploma and previously worked as a financial customer service worker. [*Id.*]. Unfortunately, Flowers suffers from several medical conditions, including severe bilateral carpal tunnel syndrome, mild persistent asthma, rheumatoid arthritis,

osteoarthritis of the bilateral knees, degenerative disc disease, status post-cervical spine fusion, migraines, lupus, depression, and anxiety. [R. 8-2 at pgs. 27-28].

On April 14, 2023, Flowers protectively filed an application for Title II disability insurance benefits, alleging a disability onset date of January 1, 2017. [R. 9 at pg. 4]. However, Flowers' claims were denied initially on July 19, 2023, and upon reconsideration on August 1, 2023. [*Id*.]. Flowers then filed a request for a hearing on August 10, 2023. [R. 8-2 at pg. 20]. Following the hearing, ALJ Christopher Sheppard (ALJ Sheppard) found that Flowers was not disabled under § 216(i) and § 223(d) of the Social Security Act through December 31, 2021, the last date insured. [R. 8-2 at pg. 34]. Flowers subsequently requested a review of ALJ Sheppard's decision by the Social Security Administration's Appeals Counsel, but they declined to review the decision. [R. 9 at pg. 4]. Because the Appeals Counsel declined review, ALJ Sheppard's decision became the Commissioner's final decision, which is subject to review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Now, having exhausted all administrative remedies, Flowers seeks judicial review of ALJ Sheppard's decision. [R. 1].

## STANDARD OF REVIEW

### A.

A court reviewing the Social Security Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*,

889 F.2d 679, 681 (6th Cir. 1989)); *Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It is important to note that where, as here, the Appeals Council declines to review an Administrative Law Judge's decision, that decision becomes the final decision of the Commissioner for purposes of judicial review. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

A reviewing court owes the Commissioner great deference.[1] In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See id.* at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the Administrative Law Judge's decision must stand if supported by substantial evidence. *Id.*; s*ee also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, an ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)) (internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's

---

[1] "Precisely because agency action often takes the form of determination of general statutory principles, agencies are often in the position of architects carrying out a commission whose broad goals have been set by Congress. Judges should thus afford agencies leeway to carry out the task of the architect." ADRIAN VERMEULE, COMMON GOOD CONSTITUTIONALISM 152 (2022).

factual determinations." *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

**B.**

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(4). The five steps are:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Thus, Flowers bears the burden of establishing the severity of her impairments and that she had greater limitations than the ALJ imposed. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). However, if the ALJ reaches the fifth step of the analysis,

the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's residual functional capacity, age, education, and past work experience. *Id*.

## ANALYSIS

In her appeal, Flowers asks this Court to review two issues concerning the Commissioner's denial of benefits. [R. 9]. First, she argues that ALJ Sheppard erred in failing to properly evaluate whether her severe migraines equate to Listing 11.02B. [*Id*. at pg. 7]. Second, she argues that the Commissioner erred as a matter of law in formulating her residual functional capacity (RFC). [*Id*. at pg. 11]. In response, the Commissioner contends that ALJ Sheppard's findings were supported by substantial evidence and free of harmful legal error and therefore should be affirmed. [R. 13].

### A.

Flowers first argues that step 3 of ALJ Sheppard's analysis was insufficient and constitutes reversible error. [R. 9 at pg. 8]. Step 3 of the five-step analysis to determine whether a person is disabled within the meaning of Title II involves consideration of the listings. "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, "if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Id*. (citing *Yuckert*, 482 U.S. at 141) (if an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step") (collecting cases)).  However, it is "uncommon" for a person with a primary headache disorder to demonstrate the equivalent to the symptoms listed in 11.02. SSR 19-4, 2019 WL 4169635, at *7.

Flowers carries the burden of proving that her impairment met "all of the specified medical criteria" for the listing, or medically equaled "all the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 530-31 (emphasis in original).

Flowers argues her headaches are the medical equivalent of a dyscognitive seizure within the meaning of 11.02B. [R. 9 at pg. 8]. Listing 11.02 defines provides, in relevant part, as follows:

> 11.02 *Epilepsy*, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
> B. Dyscognitive seizures (see 11.00H1B) occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).

20 C.F.R. Pt. 404, Subpt, P, App.1, Listing 11.02. Headaches can qualify as disabling under 11.02 even if the claimant does not have seizures. SSR 19-4P, 2019 WL 4169635 at *7. In making this determination, courts consider:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of the headache events; adherence to prescribed treatment; side effects of treatment (for example…drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations.)

*Id.*

Here, ALJ Sheppard went through the requirements of Listing 11.02 and concluded the following:

> The undersigned must determine whether the claimant's migraines meet or medically equal a listing. Because migraines are not a listed impairment, the undersigned must consider whether the claimant's impairment is of equal medical significance to the most closely analogous impairment. The undersigned reviewed the listings and determined that the claimant's impairment is most closely analogous to listing 11.02, which covers dyscognitive seizures. Listing 11.00H defines dyscognitive seizures as seizures characterized by alteration of consciousness without convulsions or loss of muscle control, and which may result

> in blank staring, change of facial expression, and automatisms. Listing 11.02B requires a history of seizures occurring either at least once a week for at least three consecutive months despite adherence to prescribed treatment. In analyzing the claimant's migraines as analogous to dyscognitive seizures, the record does not support a finding that the claimant experienced migraines with the frequency required by this listing. Similarly, the claimant does not equal Listing 11.02D, which requires evidence of dyscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, as well as a marked limitation in either physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; or adapting or managing oneself. Social Security Rule 19-4p has also been considered.

[R. 8-2 at pg. 24]. Flowers disagrees with ALJ Sheppard's findings, arguing that the evidence satisfied every part of the criteria of Listing 11.02B. [R. 9 at pg. 8].

First, for Flowers to successfully demonstrate that she was disabled based on a medical equivalence during step 3, the record must contain one of the following:

1. A prior administrative medical finding from [a medical consultant] or [a psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or

2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

3. A report from the [Appeals Counsil's] medical support staff supporting the medical equivalence finding.

SSR 17-2p, 2017 WL 3928306, at *3; *see also Barkhauer v. Comm'r of Soc. Sec. Admin.*, No. 5:24-CV-00560, 2025 WL 1115618, at *23 (N.D. Ohio Apr. 15, 2025) ("There is nothing in SSR 19-4p's language that exempts such medical equivalence findings from the requirements of SSR 17-2p, which applies to all medial equivalence determinations.").

As the Commissioner argues, Flowers has not shown that the record contained the required evidence to support a finding that she was disabled based on a medical equivalence. The Commissioner explains that two State Agency medical consultants reviewed the record, and

neither doctor found evidence that supported the argument that her migraines were medically equivalent to dyscognitive seizures. [R. 13 at pg. 5 (citing [R. 8-3])]. Further, after reviewing the record, the undersigned finds no reports from any medical consultant, phycological consultant, medical expert, nor medical support staff supporting the medical equivalence finding. Therefore, substantial evidence supports ALJ Sheppard's finding that Flowers was not disabled based on a medical equivalent.

In her Reply, Flowers argues that the Commissioner should not be allowed to rely on SSR 17-2p. [R. 14 at pg. 2]. Flowers explains that ALJ Sheppard was aware of medical evidence which supported Listing 11.02B equivalence but failed to take any action to obtain medical expert testimony. [*Id*.]. Therefore, Flowers argues, ALJ Sheppard cannot now argue that in the absence of such testimony the reviewing court should discount evidence establishing disability under Listing 11.02B. [*Id*.].

Even *if* the Court were to accept this argument, Flowers' migraines are still not medically equivalent under 11.02B. Flowers argues that the medical records demonstrate that she experienced migraines at the frequency required under 11.02B. [R. 9 at pg. 9]. As discussed above, the frequency level required to be disabling is "at least once a week for at least 3 consecutive months." *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 11.02B. The undersigned agrees with Flowers that there is evidence to suggest her headaches occur once a week. She points to several records showing that she suffered two to three headaches a week, and up to five in one month. [R. 9 at pgs. 9-10]. However, there is no evidence that Flowers suffered headaches for at least three consecutive months. *See Broderick v. Kijakazi*, No. 2:21-CV-12480, 2022 WL 19518407, at *140 (E.D. Mich. July 12, 2022) ("The applicant's claim that for a time, she experienced headaches multiple times a week, without more, does not constitute a plausible argument that she medically

equaled Listing 11.02."), *report and recommendation adopted*, 2023 WL 2711628 (E.D. Mich. Mar. 30, 2023). While there are reports of Flowers suffering headaches "for the last couple of months," [R. 8-8 at pg. 736], this is not sufficient to support a finding that Flowers suffered headaches for three consecutive months. *See Cooper v. Comm'r of Soc. Sec.*, No. 3:22-CV-01248-JRK, 2023 WL 4078982, at *11 (N.D. Ohio May 3, 2023) (finding that the ALJ did not commit error in determining that Plaintiff's headaches for a two-month period was not sufficient under Listing 11.02B), *report and recommendation adopted*, 2023 WL 4699650 (N.D. Ohio July 24, 2023). Therefore, ALJ Sheppard's determination that Flowers' migraines are not medically equivalent to Listing 11.02B is supported by substantial evidence.

**B**.

Next, Flowers argues that ALJ Sheppard erred in formulating the RFC by failing to account for all the limitations resulting from her migraines. [R. 9 at pg. 11]. A person's RFC is the most that she can do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). Pursuant to 20 C.F.R. § 404.1545(a)(3), an ALJ determines a claimant's RFC "based on all of the relevant medical and other evidence." However, "the claimant bears the burden of proof as to the existence and severity of the limitations caused by her impairments." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 911 (N.D. Ohio 2008) (footnote omitted).

First, Flowers complains that the RFC did not sufficiently account for limitations due to her migraines, such as time off task, absenteeism, phonophobia, or photophobia. [R. 9 at pg. 12]. Further, Flowers argues that ALJ Sheppard erroneously relied on objective physical and mental status examinations. [*Id*. at pg. 13]. Flowers explains that "[m]igraines constitute a subjective complaint and therefore objective evidence conclusively showing whether a person suffers from

them is impossible to find." [*Id*. (citing *Carrier v. Berryhill*, CIV-1-5086-JLV, 2017 WL 885019, at *7 (D.S.D. Mar. 6, 2017) (internal citations omitted))].

The record shows that while assessing Flower's migraines, ALJ Sheppard reviewed records showing the treatment she received for migraines:

> Turning briefly to the specific impairment of migraines, a longitudinal review of outpatient records shows the claimant received treatment for the condition of migraines, without aura (See Ex. 3F, 4F). However, objective physical as well as mental status examinations frequently documented the claimant with alert and oriented cognition, intact speech and communication skills, and with intact neurological functioning (e.g., Ex. 2F/37; 3F/23-24, 26, 29-30, 41, 44, 47, 50, 59, 68; 4F/114; 5F/317-319, 386-387, 454; 10F/3, 10, 46). Nevertheless, the undersigned has considered the potential limiting effects from the claimant's history of migraines, when forming the residual functional capacity.

[R. 8-2 at pg. 29]. Additionally, ALJ Sheppard did consider Flower's subjective complaints, noting: "[a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the objective evidence." [*Id*. at pg. 26]. Therefore, ALJ Sheppard correctly considered all the evidence related to Flower's limitations. *See* 20 C.F.R. 404.1529(a) ("In determining whether [a party] are disabled, we consider all [of their] symptoms, including pain, and the extent to which [their] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."); *see also Regan v. O'Malley*, No. 5:23-CV-00065-GFVT, 2024 WL 1336443, at *4 (E.D. Ky. Mar. 28, 2024) (finding that the ALJ reasonably relied on normal examination findings in evaluating plaintiff's migraines in the RFC).

Flowers also argues that there is no logical connection between the final RFC determination and her severe migraines. [R. 9 at pg. 14]. In formulating Flowers' RFC, ALJ Sheppard stated the following:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can no more than occasionally climb ramps and stairs. The claimant can never climb ladders, ropes,

>or scaffolds. The claimant can no more than occasionally stoop, kneel, crouch, and crawl. The claimant should avoid all exposure to work at unprotected heights, and moving mechanical parts. The claimant should also avoid concentrated exposure to vibrations, and extreme cold. The claimant can no more than frequently reach overhead with the upper extremities, bilaterally. The claimant can no more than frequently handle, finger, and feel bilaterally. The claimant can tolerate changes in a work setting to make simple work-related decisions.

[R. 8-2 at pg. 26].

The Commissioner explains that even though examinations frequently showed Flowers with alert and oriented cognition, intact speech and communication skills, and with intact neurological functioning, ALJ Sheppard still considered "the potential limiting effects from [Flowers'] history of migraines." [R. 13 at pg. 7 (citing [R. 8-2 at pg. 27])]. ALJ Sheppard also considered Flowers impairments including her history of rheumatoid arthritis, osteoarthritis, and mild asthma. [*Id.*]. The most persuasive consideration were the findings of two state agency medical consultants. [*Id.*]. Both reviewed the record and concluded that Flowers could perform light work with additional postural and environmental limitations. [*Id.*]. The medical consultants recommended limitations similar to the RFC, such as not climbing ladders, ropes or scaffolds and avoiding certain workplace exposures. [R. 8-3 at pgs. 6-7, 16-17]. Therefore, the record plainly refutes Flowers' argument.

Further, Flowers' argument that when formulating the RFC ALJ Sheppard ignored evidence such as the record evidence showing that she cannot perform sustained work function during her migraine headaches is not persuasive. [R. 9 at pg. 13]. As the Commissioner explained, both medical consultants reviewed the record Flowers refers to, along with other evidence, and came to a different conclusion. [R. 13 at pg. 8]. "'The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.'" *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 648 (6th Cir. 2013)

(quoting *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006)). If the ALJ's RFC determination is supported by substantial evidence, their determination is to be considered conclusive. *Id*. Here, ALJ Sheppard "ma[de] a connection between the evidence relied on and the conclusion reached," as required when crafting an RFC. *See Regan v. O'Malley*, No. 5:23-CV-00065-GFVT, 2024 WL 1336443, at *6 (E.D. Ky. Mar. 28, 2024) (quoting *Tucker v, Commissioner of Social Security*, 775 Fed.Appx. 220, 226 (6th Cir. 2019)).

## CONCLUSION

Thus, after reviewing the record, the Court finds that ALJ Sheppard's decision is supported by substantial evidence. Therefore, the Commissioner's final decision will be **AFFIRMED**. A separate judgment will follow.

Signed February 4, 2026.



Signed By:
*Edward B. Atkins*  *EBA*
**United States Magistrate Judge**